**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ANNAMARIE DENEEN,** ) | |
| **MICHAEL J. DENEEN,** ) | |
| **ERIN MUNOZ, PAUL MUNOZ, and** ) | |
| **and NAZRET Z. GEBREMESKEL** ) | |
| **individually and on behalf of** ) | |
| **all other persons similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No. 19-cv-5499** |
| ) | |
| **vs.** ) | **Honorable Ronald A. Guzman** |
| ) | |
| **WYNDHAM VACATION RESORTS,** ) | |
| **INC.,** ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, AnnaMarie Deneen,  Michael J. Deneen, Erin Munoz, Paul Munoz, and Nazret Z. Gebremeskel, individually and on behalf of all other persons similarly situated, allege on personal knowledge, investigation of their counsel, and on information and belief, as follows for their Amended Complaint against Defendant Wyndham Vacation Resorts, Inc. (Wyndham).    This Amended Complaint narrows the definition of the proposed class.

**NATURE OF ACTION**

1. This is a class action for breach of contract and deceptive sales practices.  Wyndham omits to disclose material facts to timeshare purchasers and breaches its contracts with purchasers in various ways including by failing to make desired destination properties available to purchasers.

-1-

2.  Wyndham's practices are so widespread that a cottage industry has developed promising to get people out of timeshares. Unfortunately, many of these exit programs are just as fraudulent as the original timeshare sales pitches. Faced with a massive number of claims, Wyndham has inserted mandatory arbitration clauses into more recent contracts to cut off class actions. This action, however, is brought on behalf of purchasers who do not have class action waiver clauses. The proposed national breach of contract class consists of Wyndham timeshare purchasers who have sought cancellation of their contracts and have had their requests for cancellation denied. The consumer fraud, fraud and negligent misrepresentation subclass is limited to residents of Illinois and the District of Columbia.

3.  Wyndham's timeshare sales policies and practices are consistently deceptive and misleading. Time and time again, Wyndham makes the same misrepresentations to consumers about fundamental aspects of its timeshare program including the value of timeshare points, the availability of properties to book for vacation, the maintenance fees involved, the transferability of points, the cleaning services available, the advance booking time required for reservations, the booking fees, the expiration date of points, and the cost of travel through Wyndham versus using websites such as trivago.com, and google.com.

4.  Wyndham's business model is premised on the false assumption that you can lie to consumers to get them to sign confusing, vague and ambiguous boilerplate contracts and that because then there is a purported written agreement, you have no liability for the lies. This is not the law.

5.  Wyndham says anything to get people to sign contracts. It refuses to let them out when they realize they have been deceived and that Wyndham has breached its contractual obligations.

The practices are particularly damaging to senior citizens and retirees, many of whom borrow heavily to finance their purchases, sometime taking out home equity mortgages to come up with the money to pay Wyndham, and face the prospect of bankruptcy when Wyndham refuses to let them out of boilerplate contracts.

6. Wyndham has been heavily sanctioned for its deceptive practices through state government penalties, orders requiring rescission of purchase contracts and a $20 million verdict in a whistle blower case. Instead of reforming its practices, it has doubled down on its deceptions.

7. Since 2003, there has been a steady drum beat of adverse awards against Wyndham as well as settlements forcing it to pay damages, penalties and grant rescission.

8. In October 2003, the California Attorney General and the District Attorney for the County of San Mateo sued Trendwest Resorts, the predecessor of Wyndham, for its unlawful sales practices and material misrepresentations. The case was settled with Trendwest agreeing to an injunction barring it from further violations and requiring it to offer rescission to customers. It also had to pay $795,000 in civil penalties. The estimated total value of the settlement was $ 4.3 million. The California Attorney General issued a Press Release about the settlement saying "Trendwest [predecessor to Wyndham] misled consumers through deceptive sales practices and non-disclosure, and illegally denied consumers the ability to cancel their contracts." Trendwest Will Pay Restitution to Consumers and $795,000 in Civil Penalties", October 29, 2003, https://oag.ca.gov/news/press-releases/attorney-general-lockyer-settles-lawsuit-against-one-worlds-largest-timeshare. (Last visited August 10, 2019.)

9. In 2007, California customers sued Wyndham in a class action. The case settled on a class basis. *(Wixon et. al. v. Wyndham Resort Development Corp.*, N. D. Cal. Case No. C 07-

02361.)   The settlement class consisted of California residents, and persons who entered into transactions in California, who bought Worldmark timeshare interests from Wyndham.   The settlement was for persons who purchased timeshares before November 5, 2006.   Wyndham agreed to cancel 22 million vacation credits; it made changes to its timeshare program; and it agreed to pay class counsel up to $5 million in legal fees.

10.   In 2015, the State of Wisconsin sued Wyndham for rescission of timeshare purchase contracts with 29 owners.   As part of a settlement, Wyndham agreed to pay $665,000 in restitution, a $99,520 civil fine, $62,702.20 in fees and costs, and to rescind the contracts.   (Sauk County Wisconsin Case No. 2015CX000005).   The Wisconsin Department of Agriculture, Trade and Consumer Protection alleged that Wyndham sales personnel had made misrepresentations inconsistent with purchase contracts, telling customers gift incentives were available for one day only, and not disclosing on first contact with prospects that a timeshare sale was being offered.   The restitution and debt relief was as high as $84,698 for one Madison, Wisconsin couple.   After the settlement, Wyndham issued a press release promising to "meet the highest standards of fairness and transparency to consumers".

https://www.wiscnews.com/news/local/crime_and_courts/wyndham-settles-consumer-complaints-for/article_c041b926-efda-53da-8d61-5560c7fc3718.html (Last visited August 13, 2019.)

11.   In 2016, a Wyndham whistle blower employee was awarded $20 million *(Williams v. Wyndam Vacation, Ownership, Inc.*, San Francisco Superior Court, Case No. CGC- 12-526187) after being wrongfully terminated.   The whistle blower exposed that Wyndham defrauded elderly customers, opened and maxed out credit cards without their knowledge, and lied about fees.   In its rulings on post trial motions, the court found that "Wyndham's San Francisco site was defrauding

many customers, mainly the elderly... When timeshare sales were off, Wyndham had 'TAFT Days' – "Tell Them Any Frigging Thing'". (See *Williams*, *supra*, Slip Op. at pp. 1-2 dated March 10, 2017 attached as **Exhibit A** .)

12.   After getting consumers to sign form contracts through deceptive sales practices, Wyndham then breaches its  form contract entitled " Security Agreement - ClubWyndham Access Vacation Ownership Plan - Retail Installment Contract - Purchase and Security Agreement" by not making destination accommodations available,  by charging excessive fees not referenced in the contract, and by failing to provide promised ancillary services such as cleaning and housekeeping.

## PARTIES

13.  Plaintiffs AnnaMarie and Michael Deneen live in Homer Glen, Illinois and are residents of the State of Illinois.  Plaintiffs Erin and Paul Munoz live in Chicago, Illinois and are also Illinois residents.  Plaintiffs Plaintiff  Nazret Z. Gebremeskel lives in the District of Columbia.  All Plaintiffs are government employees.  By filing this suit, all Plaintiffs are requesting cancellation of their contracts in addition to all such requests previously made.

14.  Defendant Wyndham is a Delaware corporation doing business in the State of Illinois.  Its principal office is at 6277 Sea Harbor Drive, Orlando, FL 32821.[1]

## JURISDICTION AND VENUE

15.  This Court has subject matter jurisdiction under the Class Action Fairness Act,  28

---

[1]The holding company for Wyndham is a publicly traded company known as Wyndham Destinations Inc.   Wyndham Destinations Inc. is also a Delaware corporation.  On or about March 19, 2018, Wyndham Worldwide announced its filing of a Form 10 Registration Statement whereby it was separated into two public companies.  One public company which owns and operates hotels was the Wyndham Hotel Group which became known as Wyndham Hotels and Resorts, Inc.  The other public company which offers timeshares is Wyndham Destinations Inc.

U.S.C. § 1332(d)(2). This is a civil action in which the matter in controversy exceeds the value of $5,000,000, exclusive of interests and costs. At least one class member is a citizen of a state that is different from the state of citizenship of Wyndham.

16. Defendant Wyndham is subject to jurisdiction in this District by virtue of its extensive business dealings and transactions within the State of Illinois. Wyndham leases office space in Chicago, Illinois. Wyndham also leases space for administrative functions in Northbrook, Illinois. Wyndham maintains marketing and sales offices throughout the United States including an office at 71 East Wacker Drive, Chicago, IL 60601. It regularly hosts timeshare sales presentations at various locations in this District including Chicago and Six Flags Great America in Gurnee, Illinois. Wyndham is registered with the Illinois Secretary of State to do business in Illinois (File Number 68867657). Wyndham destination properties in the timeshare program include the Wyndham Grand Chicago Riverfront hotel in Chicago, Illinois and the Wyndham Galena in Galena, Illinois. Illinois destinations are among the ones that Wyndham owners can not reasonably book. The Deneen Plaintiffs were unable to book desired destinations in Chicago, Illinois and in Galena, Illinois. The Munoz Plaintiffs were solicited at a Wyndham sales booth in Gurnee, Illinois to attend a sales meeting in Chicago, Illinois where Wyndham tried to sell them additional points. Wyndham has ongoing and continuous contacts with Illinois particularly with regard to sales and marketing presentations which are at the heart of this complaint.

17. Venue is proper in this District under 28 U.S.C. §§ 1391( b ) and ( c ) because Plaintiffs reside in this District, a substantial part of the events giving rise to the claim occurred here, and because Defendant maintains offices in this District.

## FACTUAL ALLEGATIONS

18.   Wyndham is the largest timeshare ownership program in the world with 925,000 members and over $5 billion in revenue in 2017.  It develops and operates a portfolio of over 220 resorts throughout the world with 25,000 individual units.   Wyndham markets and sells vacation ownership interests in the form of points, provides consumer financing in connection with the sale of points,   provides property management services to the purchasers, and develops and acquires vacation ownership resorts.

19.   On August 2, 2017, Wyndham Worldwide issued a press release that it would separate into two publicly traded companies.  It announced that Wyndham Vacation Ownership would be the world's largest publicly traded timeshare company. Wyndham Vacation Ownership joined with RCI. RCI was the world's first and largest vacation exchange network with over 4,300 affiliated properties in more than 100 countries.  The joinder of Wyndham Vacation Ownership and RCI was to provide purchasers of Wyndham points with the widest possible availability of timeshare units for vacation usage.  In the press release announcing the change, Michael Brown, CEO of Wyndham Vacation Ownership, stated:

> By joining the largest timeshare company in the world with the largest timeshare exchange network and connecting them seamlessly to the Wyndham Rewards platform, we will be positioned to provide the widest variety of vacation opportunities to our owner base and network affiliates..
>
> *Wyndham Worldwide Announces Plan to Become Two Publicly Traded Hospitality Companies*, Wyndham Destinations Press Releases (August 2, 2017),
>
> https://www.wyndhamdestinations.com/news-media/press-releases/wyndham-worldwide-announces-plan-become-two-publicly-traded-hospitality (last visited Aug. 6, 2019) **(Exhibit B hereto.)**

20.   On its website, Wyndham Destinations Inc. boasts that it has over 4,300 vacation

destinations, over 20 brands, and that as the world's largest vacation ownership, exchange and rental company, it makes every trip a perfect vacation experience.

https://www.wyndhamdestinations.com/us/en (Last visited Aug. 6. 2019).

## WYNDHAM'S BUSINESS MODEL

21.  In the traditional timeshare business model, a participant purchased a fractional interest in a specific piece of property.   The member would own the right to a specific week of occupancy in a particular unit in a specific identified property.  The participant could then be entitled to trade that week of ownership for a week in another property.   However, if the member did not trade his or her week, he or she was guaranteed the right to stay in the identified week in the identified property.

22.  In the Wyndham model, participants purchase points which are supposed to be currency to stay at any Wyndham or affiliated resort throughout the world.  Fundamental to the Wyndham sales and marketing pitch is that purchasers will have a dizzying array of choices and will be able to stay at their desired property wherever it might be.  Purchasers  buy points so they can travel to their desired location whether it is Scotland, Colorado, Hawaii or some other place .  In fact, desired destinations are not available at the desired time and have to be booked sometimes as much as a year in advance, assuming they are even available.  The sales pitch is false and misleading.

23.  The business practice of Wyndham is to focus on selling points, rather than managing the destinations and making them available to members.  Wyndham members find that there is little availability.   When they complain,  Wyndham's response is that they need to buy more points.  Wyndham members are subject to a life long frenzied marketing pitch to buy more points and

upgrade their membership. When a member arrives for a vacation at a destination, the sales pitch starts before they have even parked their car. A common Wyndham ploy is not to give a parking pass to a member until they agree to attend an "owner update meeting". The purported owner update meeting is nothing more than another high pressure sales presentation to get them to buy more points.

24. If Wyndham members manage to get parking passes without committing to attending a sales meeting, they are constantly harassed with phone calls to their rooms and marketing materials under their doors to attend more sales meeting. These meetings last most of a day and do not conform to most consumers' idea of a "vacation day".

## THE MISLEADING AND DECEPTIVE WYNDHAM SALES PRESENTATIONS

25. The Wyndham sales presentations follow the same pattern. The key elements are:

a. As was the case in the State of Wisconsin action, prospects are not told up front that they will be attending a lengthy high pressure Wyndham timeshare sales meeting – otherwise, few, if any, people would show up;

b. Prospects staying at a Wyndham owned hotel or resort are enticed to attend the timeshare sales meeting by the offer of a free gift, free trip, discount coupon or prize;

c. Purchasers are lied to about how long the meeting will last – the sale pitch is that if you just attend this one hour or 90 minute meeting, you will "earn" the offered gift or prize;

d. In reality, the sales presentations usually last five or six hours;

e. Potential customers are physically worn down by the length of the meetings;

f. The Wyndham strategy is to break down the prospective purchaser's resistance to buying by relentless physical and psychological pressure;

g. Prospects are told that they need to buy for the sake of their children, to be able to leave the points to their children, to spend time with their families and to fulfill their dreams of being able to vacation anywhere in the world;

h. People are kept in the meetings for hours at length by free food, the offered gifts and a never ending barrage of "special" bonus points if they sign a contract right away;

I. Whenever someone shows resistance, the sales person leaves to consult with a manager and then comes back to offer special bonus points, some type of additional prize or gift, and the offer of a higher level of membership;

k. The sales pressure is relentless throughout the day;

l. Wyndham makes it difficult for people to leave by the threat of losing their prizes, and other tactics such as checking in purses and transporting attendees in vans to off site locations so they have no simple way to return;

m. One-on-one sales pitches are made throughout the day and a prospective purchaser is often assigned one person who stays with them the entire time to befriend them; and,

n. A false sense of urgency is created with repeated use of phrases such as "one time offer" and "today only" to create the impression that prospects can never have the same opportunity again.

If this was all there was to it, it would simply be a high pressure sales environment akin to being locked in new car dealership for most of the day. However, individuals are repeatedly lied to about the material elements of the program including misrepresentations that points will not expire, that units will be available, that maintenance fees will not increase, that long advance booking time is not required, and that points are easily transferable or marketable.

26. First person narratives about what goes on at Wyndham sales presentations abound on the web as well in the complaints filed with the State of Florida obtained through a public records request. Here is but one example from a document produced by the State of Florida. It is a written statement from Kathryn Bryan of Oregon, Ohio filed with the Florida Division of Consumer Affairs on September 5, 2018 (**Exhibit C** - emphasis supplied) :

We met with Brett Sherman who described the benefits of owning Wyndham points,

-10-

how Wyndham was continuously purchasing resort properties for its owners, and how reasonably priced Wyndham points were. We were about to leave when the sales manager came over and stated that if we purchased 154,000 points at that meeting, he would allocate an additional 154,000 bonus points which would put us in a Silver Owner level.

We were told that by doing this it would allow us to stay at any of the Wyndham properties around the world. **Later we found out this was totality [sic] not true, but the lie did come to light until we tried to a book a week stay in Hawaii for our anniversary.**

27. Kathryn goes on to describe "owner update" meetings which were promised to last 90 minutes. Purchasers were enticed to attend with $50 gift cards. The meetings actually lasted 4 ½ hours. Her narrative continues with descriptions of subsequent sales meetings. She confronted a senior sales manager with misrepresentations from prior meetings. He responded:

"Maybe so, but these people are no longer here. And whatever they told you we do not have to honor'. He in essence told us that we had been lied to but then said that he could help us get out of this situation if we purchased an additional 210,000 points. ...

We were accompanied to the finance office by all three salespersons. It felt like we were under arrest or going to the firing squad. All we wanted to do was straighten out the lies that we had been told that the other salespeople had told us and get the mess cleaned up. We deposited an additional $3842.69 and financed the additional points for $34,807.01 ...

The additional points and our Platinum status would guarantee us reservations at the Emerald Grade any time of the year even in the winter months. The sales manager did not tell us that Wyndham had only taken over a certain number of 2/3/4 bedroom units (no 1 bedroom units).

We had to discover this on our own when we attempted to book a one week stayed [sic] there and called the Emerald Grande directly. **We were informed they could not accommodate us in any unit for an indefinite period of time no matter what our level with Wyndham.**

**(Yet more omission/ misrepresentation of facts) But you know it can't even be called that. It is just out-and-out lying.**

-11-

Kathryn's statement highlights the misleading and deceptive Wyndham tactics. Its sales people routinely falsely tell purchasers that the solution to their availability problem is to spend more money for more points.

28. Wyndham sales people are trained to make misrepresentations. The whistle blower complaint filed by former Wyndham sales people Patricia Williams and Steve Gutfield against Wyndham (Superior Ct. State of California, San Francisco County Case No. CGC 12-526187)( **Exhibit D** hereto) lays this out in excruciating detail. Plaintiffs state in their First Amended Complaint :

> ... Ms. William overheard other sales associates making illegal and false representations to various customers. ... For example, some owners were informed if they increased their points (points are used to establish eligibility for various products), they could do so at essentially no cost. ...

> Other member services representatives falsely represented that they were going to be reducing the monthly statements for owners or that maintenance fees would be 'capped', when in fact such payments were actually being deferred or they were subject to increases. These 'lower monthly payments' schemes in reality were simply a way to fraudulently induce customers into buying more services and borrowing more money.

> Williams First Amd. Complaint ¶17.

29. The Williams Plaintiffs go on to allege that Wyndham knew of, sanctioned and encouraged the fraudulent behavior in order to drive up sales. Numerous supervisors and managers were aware of the conduct. Indeed, sales manager Steven Savino began "conducting training meetings in which he taught employees how [to] use unethical methods for selling timeshares..." William First Amd. Complaint ¶22, 24.

### PLAINTIFFS ERIN AND PAUL MUNOZ

30. Erin Munoz has worked as a Chicago Police Officer since 1999. She is assigned to a

citywide tactical team targeting gangs and high crime areas. Her husband Paul Munoz is a Sergeant with the Cook County State's Attorney's Office Investigations Bureau. He investigates homicides, narcotics and other felonies.

31. In January 2013, they were on vacation at a Wyndham resort, Bonnet Creek, in Orlando, Florida. Erin had found a unit to stay at through ebay. They had no prior dealings with Wyndham Vacation Resorts, Inc. However, Wyndham Vacations Resorts, Inc., the defendant herein, had sales people on site. The sales staff approached the Munoz's and offered them theme park tickets to attend a timeshare sales presentation. As usual, the presentation was lengthy. Among other things, the Munoz's were told that a Wyndham timeshare would be a wonderful purchase to pass on to their children.

32. Nothing was said about problems with availability of units once they purchased.

33. Nothing was said about the fact that points would expire if not used.

34. Nothing was said about maintenance fees increasing.

35. Nothing was said about having to book one year in advance.

36. Nothing was said about the number of points needed in high versus low season.

37. Nothing was said about the fee involved if points were transferred to RCI, a Wyndham affiliate.

38. They were misled by the deceptive sales process. They were induced to enter a Purchase and Sale Agreement dated January 2, 2013. Their Purchase and Sales Agreement of the Munoz Plaintiffs ( **Exhibit E**) makes no sense on its face. Wyndham purports to sell them:

a 84,000/804,860,000 undivided in tenants in common interest in Units 679-686, 688, 690-698, 779-786, 788, 790-798, 879-886, 888, 890-898, 979-986, 988, 990-998, 1079-1086, 1088, 1090-1098 in Building S, Phase V having a Floating Use

-13-

Right ("Property') of FAIRFIELD ORLANDO AT BONNET CREEK RESORT, A CONDOMINIUM ("Condominium") together with all appurtenances thereto , located at 9560 Via Encinas, Lake Buena Vista, Florida 32830.

It is impossible to tell with any certainty what property is being bought and sold. Among things, "floating use right" is a non-existent legal term and is not defined in the agreement.

39. The contract assigns them 168,000 points and states that points are only "symbolic". This is contrary to the sales presentations which equate points to money or currency to be used to obtain vacation stays. The contract also has a half baked definition of VOI, Vacation Ownership Interest, as a fraction where it defines the numerator but fails to state what the denominator is.

40. The contract fails for its ambiguity. It is void *ab initio* and should be rescinded.

41. After purchasing, Erin and Paul discovered that destinations were not available and that they could not even stay at Bonnet Creek in Orlando. They had a better chance at staying at that Wyndham resort by just buying on line through ebay as they had done before becoming Wyndham vacation members.

42. Subsequently, the Munoz's were at Six Flags Great America in Gurnee, Illinois, and stopped by a Wyndham sales booth. They were offered a certificate for a free two night hotel stay if they attended a meeting at the Wyndham Grand Chicago Riverfront Hotel. This meeting turned into another lengthy sales presentation. Erin and Paul Munoz were told that the solution to the problem they were having with availability was to spend another $20,000 to buy more points.

## PLAINTIFF GEBREMESKEL

43. Plaintiff Nazret Gebremeskel (Naz) lives in the District of Columbia. She works for the District of Columbia as an unemployment claims examiner.

-14-

44. In September 2017, she was vacationing in Las Vegas, Nevada and wanted to buy tickets for Cirque du Soleil. The ticket seller told her that she would be eligible for discount tickets if she agreed to attend a 90 minute presentation where breakfast would be served. The event was a marketing presentation by Wyndham to sell contracts in its timeshare program. Instead of lasting 90 minutes, the presentation lasted almost 7 hours. It began at 9:00 a.m. and was not over until 4:00 p.m. When Naz was at the meeting, a Wyndham representatives insisted on checking her purse. She was assigned a single sales agent who spent the whole day with her. Naz was transported in a van to the meeting at a Wyndham location from the hotel where she was staying so that made it difficult for her to leave the sales presentations. In its form letter denying purchasers requests to rescind contracts, Wyndham states that no one is forced to stay at these sales presentations and that attendees are "free" to leave. The truth is that short of locking the doors, Wyndham does everything it can to discourage attendees from leaving.

45. Wyndham sales presentations are notorious for their length and sales pressure. Individuals are enticed to attend by the offer of free gifts or vacation stays which are often hard to redeem. The sales pitch is promised to be short in length and then drags on for many hours. The sales personnel misrepresent the availability of vacation properties, misrepresent the cost and fees of the program, and create a false sense of urgency by stating that an offer is good for that day only. Misrepresentations are also made about resale value of the program, and the reservation process. These are the sales practices of Wyndham that led the States of California and Wisconsin to sue Wyndham for false and deceptive marketing.

46. The Wyndham sales presentation to Naz was true to form as a high pressure marketing pitch. Various gifts and prizes were offered to induce Naz to sign a contract. She was offered bonus

points, a tablet, and a trip to Las Vegas as incentives to sign a timeshare contract.

47.  The following deliberate misrepresentations were made to her:

| False Wyndham Sales Representations | Truth |
|---|---|
| Wyndham timeshare points never expire. | They expire every year if not used. |
| Wyndham timeshare points can be sold for cash. | They expire every year if not used. |
| Maintenance fees would not increase significantly. | Maintenance fees increased significantly. |
| Contract could be refinanced for lower interest rate with another bank. | Contract could not be refinanced. |
| Purchasers would routinely save money by being Wyndham timeshare owners. | It was often cheaper to simply book flights and hotels on line through public websites such as booking.com, hotwire.com or trivago.com than using Wyndham points. |

48.  In addition, the following material facts were never disclosed to Naz.

| Omissions |
|---|
| No disclosure was made about how many points would be needed to stay at resorts or hotels. |
| No disclosure was made as to how far in advance destinations had to be booked. |
| No disclosure was made as to availability of destinations. |
| No disclosure was made that many times, it would be cheaper to book a flight or hotel through trivago.com or other public travel websites than through the Club Wyndham program. |
| No disclosure was made that fees would be required to transfer points for use with RCI, an affiliated timeshare company. |
| No disclosure was made that Purchaser would have to wait to use points after signing contract. |

No disclosure was made that approximately $50 fee would be charged to transfer points to RCI.

49.  Naz signed the "Security Agreement, ClubWyndham Access Vacation Ownership Plan, Retail Installment Contract, Purchase and Security Agreement" dated September 2, 2017 attached as **Exhibit F**.  The total price to be paid for the 126,000 Points after finance charges is $39,489.70.  After signing the agreement, Naz discovered that it was cheaper to book flights to destinations such as Jamaica outside the Wyndham program through public websites that do not even charge for points or membership.

50.  She has tried to cancel her agreement, but Wyndham refuses to cancel it.  She also paid $4,595 to American Resource Management Group, LLC who told her they would be able to obtain cancellation of the Wyndham contract.  American Resource failed to do so and is now in bankruptcy. (S.D. Fl. Bankr. Ct. Docket No. 19-14605.)

## PLAINTIFFS ANNAMARIE AND MICHAEL DENEEN

51.  AnnaMarie and Michael Deneen (Deneens) are a married couple living in Homer Glen, Illinois.   AnnaMarie works for the Will County Assessor's Office, having previously worked as a paralegal for law firms including Neal, Gerber and Eisenberg in Chicago.  Her husband works for the federal government in the office of Personnel Management.  He retired from the military after 29 years in the U.S. Army and the Oklahoma National Guard.

52.  In 2014, the Deneens were vacationing in Branson, Missouri when they were persuaded to attend a Wyndham timeshare sales presentation with the promise of a free trip to Las Vegas.  The sales presentation lasted for hours and consisted of non-stop high pressure marketing.   After being closeted with Wyndham sales personnel for three to four hours, the Deneens signed the contract

entitled "Security Agreement - ClubWyndham Access Vacation Ownership Plan - Retail Installment Contract - Purchase and Security Agreement", attached hereto as **Exhibit G** and dated March 16, 2014. They purchased 105,000 points for the right to use and occupy Wyndham vacation properties. The total sales price was $31,700.35.

53. Like Naz's contract, the agreement is a pre-printed form contract. Wyndham uses the same agreement with other Class Members. The pre-printed terms are not negotiable. There is no arbitration clause in the agreements signed by Naz and the Deneens.

54. The prefaces to the agreements have the same language (apart from the name of the Purchaser). The preface to the Deneens' agreement states:

> Wyndham Vacation Resorts, Inc., a Delaware corporation ("Seller") agrees to sell to MICHAEL J. DENEEN ANNA M. DENEEN HUSBAND AND WIFE ("Owner") a membership interest ("Ownership") in PTVO Owners Association Inc., a non-stock, non-profit Delaware corporation ("Association") which Ownership includes the right to participate in the ClubWyndham Access Vacation Ownership Plan ("Club") and the right to use and occupy Club Accommodations. ... These rights are denominated in Points...

The Agreement does not state what the initial "PTVO" stand for.

55. The Deneens purchased their 105,000 points for $18,700 which was financed by Wyndham over 10 years at an annual rate of 15.99%. The total sales price was $31,700.35. The 105,000 points expire annually if not used. At the beginning of the next year, the Deneens are credited with another 105,000 points. Points are the currency used to stay at Wyndham resorts. For instance, booking a one bedroom deluxe unit at the Wyndham Durango, Colorado for one week during prime season requires 105,000 points ( although this does not appear to be a prime destination since families are told that the rooms are small and that a coal train station behind the

property leaves settled soot). Prime locations such as Hawaii require many more points – up to several hundred thousand points for a week's stay.

56.   Paragraph 1 of the form agreement, which is entitled Ownership, states that "Owner is a member of the Association, and is entitled (a) to use Points to reserve the use of accommodations in the Club ..."   This language creates an obligation on the part of Wyndham to make accommodations reasonably available.  Otherwise, the contract fails in its essential purpose.

57.   Paragraph 4 of the agreement, entitled Club Accommodations, provides that "Owner shall have access to all existing and future Club Accommodations and the properties within which those Club Accommodations are located ("Club Properties") as well as all other accommodations owned or operated by or associated with Club, wherever located".  Likewise, this language creates an obligation on the part of Wyndham to make accommodations reasonably available.

58.   Wyndham has breached the foregoing provisions of the agreement because it has failed to reasonably make available to Club Accommodations to the Deneens.  They have a contractual right to obtain Club Accommodations and reservations within a reasonable time prior to the reservation dates.  The Deenens have been repeatedly unable to do so.   Club Accommodations are not available on a reasonable basis.  The Deneens have been denied booking requests for Wyndham destinations in Chicago, Illinois, Galena, Illinois and Nashville, Tennessee.  Further, they have to book at least nine months in advance to have a chance at their desired locations.

59.   In addition, Wyndham has imposed unreasonable booking fees on Class Members including the Deneens.  For instance, a $99 reservation fee is charged for each Wyndham Club Pass reservation to book space at a WorldMark affiliated resort.  Reservations for friends and family involve a $49 fee.

60. Wyndham is obligated to provide other services, such as cleaning services, to the Deneens and Class Members. Not only are there extra fees for these services, but they are not provided on a reasonable basis. The Deneens stayed at a Wyndham destination where they were told by housekeeping staff that staff were directed to clean the rooms of non Owners on a daily basis and only to clean rooms of Wyndham Owners after their vacation.

61. The Agreement did not provide full and adequate disclosure about these additional fees charges and lack of service.

**WHAT OCCURRED WITH PLAINTIFFS IS TYPICAL AND INVOLVES COMMON ISSUES OF LAW AND FACT WITH OTHER WYNDHAM TIMESHARE OWNERS**

62 The misrepresentations made to Plaintiffs at the Wyndham sales meetings are typical of misrepresentations made to other Class Members. The same fraudulent representations and omissions are made time and again with uncanny regularity to Class Members. A recent public records request to the State of Florida, Division of Consumer Services, revealed consumer after consumer complaining of misleading sales practices relating to the use of Points, availability of destinations, advance booking time required, misrepresentations about the value of Points, and the misrepresentations about maintenance fees. Further, many of the complaining consumers are elderly and retired. (Copies of some of the complaints produced by the State of Florida are attached as **Exhibit H.**)

63. What follows is merely a sample of the many formal complaints against Wyndham. These complaints reflect the common nature of the Wyndham misrepresentations.

| Consumer | Consumers' Own Words | Subject of Misrepresentations |
|---|---|---|
| Ronald Flater<br>Grundy Center, Iowa | "greatly misrepresented" | Value of points<br>Advance booking time required |
| John and Jayne Branscombe<br>Bangor, Maine<br>(80 year olds) | "lies" | Maintenance fees |
| Alberto and Nancy Bernal<br>Auburn, California | "severely lied to" | Omissions in contract |
| Tim and Joy LaFleur<br>Hallsville, Texas | "deceitful tactics" "falsehoods" "fabrications" "misrepresentations" | Maintenance fees<br>Availability<br>Value of points |
| Patricia Wheelock<br>Webster, Florida<br>(Elderly) | "very misrepresented" "lying" "false claims" "threaten me" | Availability |
| Carl and Connie Kluttz<br>Gastonia, North Carolina | "all a huge lie" "misrepresented everything" | Value of points |
| David Kuebler<br>Albuquerque, New Mexico | "lies and out-and-out deceit" | Value of points |
| Herbert Chapman Jr.<br>Susan Pollard<br>Surprise, Arizona | "deceived" | Maintenance fees |
| Linda and Frank Valencia<br>Germantown, Maryland | "we have been misled" | Maintenance fee |
| Billie and Nina Davis<br>Raeford, North Carolina | "false and misleading" | Availability |
| Lonnie Harrington<br>Olive Branch, Mississippi | "Your company's mot[t]o must be: Tell them ANYTHING you have to get their names on the dotted line." | Availability<br>Maintenance fee |

| William and Virginia Radford Bumpus Mills, Tennessee | "we have not been told truthful things" | Availability Advance booking time required Maintenance fees |
|---|---|---|
| Sandra Derr Lewes, Delaware | "Scam" Salesmen "lie outright to customers" | Value of points |
| Heather Bertolami Brookline, New Hampshire | "we were lied to" | Availability |

64.  Similarly, Wyndham timeshare owners have posted the comments quoted below which reflect the commonality of their experience.  ( A printed copy of these customer comments downloaded from the cited websites is attached as **Exhibit I -** emphasis supplied throughout**.**)

a.  Cinthia from Wilder7/9/2019 11:07:24 am

Some misrepresentations and omissions they left out to get us to pay for this ridiculousness:
-Friends and family can go on vacation, HOWEVER WE HAVE TO BE PRESENT.
-They did not tell us **most locations are booked like a year in advance**. We can not book our vacations like that with our work.
-They left out the Club Dues
-**They left out the maintenance fees**

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

b.  Wyndham Vacation Resorts / Timeshares / scam promise!
 US Review updated: Jul 10, 2019

I am completely appalled by what I am about to tell you. Purchased a timeshare from fairfield fairshare plus resorts currently doing business as wyndham vacation resorts, rci, cendant inc (parent company). Being skeptical about the ease and worry free vacation promise, they promised big vacation savings, convenience, flexibility, and great customer service. All false. My main contention for buying this timeshare was my **inability to use it yearly and lengthy advance reservations. "no problem, you**

**can bank up to 4 years of unused timeshare**, " they preached.

https://www.complaintsboard.com/complaints/wyndham-vacation-resorts-timesha
res-c59202.html (Last visited Aug. 6, 2019)

c. Tracy Raines Sep 08, 2008

Wow! we bought the discovery vacation you know, just to try it out! We went on
vacation once and that was it. By the time we were ready to use our last 76k points
for a weekend getaway, BAM! Too late, **Don't have anything available and guess
what! You have until February to use your points or they will expire**!
We ar 6mo later still paying on this package that we cannot even use. I wish I knew
how to stop them from drafting anymore of MY money! When I complained to the
person on the phone they put me in touch with another salesman that was willing to
MAKE ME A DEAL!!! Trade up and use our 76K points as payment!!!"

https://www.complaintsboard.com/complaints/wyndham-vacation-resorts-timesha
res-c59202.html (Last visited Aug. 6, 2018)

65.   There has been a tsunami of Class Member complaints about Wyndham's failure to

honor its contractual obligation to provide Club Accommodations on a reasonable basis.   In the last

three years alone, the Better Business Bureau has received 2,165 complaints about Wyndham.

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam has  over  1,000

complaints about Wyndham, many of which center on the fact that requested properties are not

available.  Indeed, Wyndham Owners routinely complain that a requested property is not available

through the Wyndham timeshare program, but can be booked outside the program through public

websites such as trivago.com or booking.com.

66.   Examples of purchaser comments about Wyndham's failure to provide requested Club

Accommodations follow (with emphasis supplied throughout and printed versions of the comments

attached as **Exhibit J**):


a.  Jonas Bernholm 2/7/2019 06:07:07 am

.... Broken Promises and Contracts

I had to stop paying monthly loan interest and the maintenance fees. Because of Wyndham Club's **breach of contract**. ...

I also question Wyndham's ability to be able to supply what the customers are booking. Comments on the internet talks about long waiting lists and that **it's almost impossible to get what is wanted.**

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

b.   JANHEE 3/13/2019 07:38:08 pm

Help! we just signed up for time share with Wyndham Feb 2019 while on vaca in So Carolina. Got home-two days later I went online to see what vaca we will take-so disappointed. Georgia has only one and I need 3 bedroom-**no week open** until dec 2019!! We were told-no problem booking EVER..except around holidays--then you should book a few months. Tried to cancel-but we were TWO days out of the 5 day contract period. Now they say..too bad--you pay us the $30,000 and monthly maintenance. This is wrong-they are not giving what they promised to us. Help! How can I get out of contract? any advice? thanks

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

c.   Carrie of Bothell, WA Verified Reviewer

Original review: Aug. 1, 2019
We purchased this timeshare because of the promise of increased ability to vacation with our kids or even get away alone every once now and then. It's been absolutely the opposite. It's impossible to navigate the system, **dates are always blocked out through the owner site but available on public sites**, membership doesn't even cover vacation so you have to upgrade to get any use out of it, and the customer service provided is abysmal. We regret this purchase so much and wish there was a way out of it.

https://www.consumeraffairs.com/travel/wyndham_vacation_resorts.html
(Last visited Aug. 6, 2019)

d.   Mike 12/26/2012 07:59:24 am

... now I ccant seem ttto book anything that owned by Wyndram. I seem to alwys pay out of pocket in additioon to using points. Itried staying iin Key West and Puerto

Rico witth my kiis and **nothng was available** except for a 1 bedroom with 1 king size bed (for 5 people). I wwant to get rid of this nnow. Its nothig wht they said tis would be. I want to get riid of this ASAP...Can anyone help?

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

e. Bonnie 4/25/2016 09:16:24 pm
We went to presentation in Kona Hawaii and they managed to hook me into buying. They fed into my desire to take my grandchildren to Disneyworld by telling me about the wonderful place they have there. By the time I accumulate enough points to do it and if there were any openings, my grandchildren will be graduated from college. **Booking a place in Hawaii is almost impossible**.

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

f. LuLu 7/12/2014 03:20:11 am

... Come to find out we don't have enough points to stay anywhere for a week, and **nothing is ever available when you do want to vacation.** They told us we would be able to vacation at any of their resorts. Maybe if you book over a year in advance.
http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

g. Brian J Willett 8/29/2016 03:54:32 pm
Wyndham is is nothing more than a scam. **Nothing is ever available** and I was told I needed to book 10 months in advance. It took them 25 minute before they even answered my call to make a reservation.

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

h. Tiffany 9/5/2016 02:59:20 pm


... I set up our online accounts and started looking at RCI for Bonus Weeks.....**there wasn't a single week for $200!!! Myrtle Beach was $1400 a week, I couldn't even find anything available in New York or California**!! ... I also tried to get a week at Destin next July only to be told that they are **COMPLETELY BOOKED THE WHOLE SUMMER!!!!**

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam

(Last visited Aug. 6, 2019)

I.  Butch4/3/2018 04:40:33 pm

Get this, I just checked on a room at Wyndham Myrtle beach through Trivago for late June, no problem getting one. Tried to book a room through Wyndham for the same date, **none available**.

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

j.  Tamela Gx7/9/2019 12:24:04 pm
**It took us 2 years just to book a vacation** with our ownership. While on vacation when we aired our grievances to Wynhdam, they suggested we upgrade to alleviate our problem and we listened, however, we still could not book. ....
This company should be illegal. $40,000 for 5 nights of vacation.

http://www.timeshareconsumerbureau.com/news/the-wyndham-timeshare-scam
(Last visited Aug. 6, 2019)

67.    The foregoing posts are but a small sample of Class Members who have commented on the internet about Wyndham.   The complete data on the number and percentage of Class Member whose requests for booking are denied is solely within the knowledge and control of Wyndham. Similarly, the data on how many Wyndham destinations are unavailable and the number of months in advance that a Class Member must request a reservation is solely within the possession of Wyndham.  Further, Wyndham alone possesses the materials used to train its sales agents.

## CLASS ACTION ALLEGATIONS

68.    The Deenen and Munoz Plaintiffs bring this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a national breach of contract Class defined as follows:

All persons who ( i ) entered into a "Security Agreement - ClubWyndham Access

Vacation Ownership Plan - Retail Installment Contract - Purchase and Security

-26-

Agreement" (Agreement) with Wyndham or its successors on or after August 14, 2009 whose Agreements do not contain arbitration clauses and (ii) requested that Wyndham cancel or rescind their contracts. Excluded from the Class are persons whose contracts were cancelled.

69. Plaintiff Nazret Z. Gebremeskel seeks to represent the following Subclass of District of Columbia and Illinois residents under F.R. Civ. Pro. 23(b)(3) :

All persons who entered Agreements without arbitration clauses on or after August 14, 2016 after attending Wyndham sales presentations where material misrepresentations and omissions were made about the Club Wyndham points program. Excluded from the Subclass are persons whose contracts were cancelled.

70. Plaintiffs reserve the right to modify the Class definition as they obtain further information through discovery.

71. Also excluded from the Class are Defendant and entities in which Defendant has a controlling interest, its agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff or immediate family.

72. The number of Class Members is believed to be in the thousands, making the class so numerous that individual joinder of all Class Members is impracticable.

73. Plaintiffs are members of the proposed Class.

74. There are questions of law and fact common to Plaintiffs and to the proposed Class, including but not limited to the following:

a. Whether Wyndham failed to reasonably provide Club Accommodations to Class members;

b. Whether Wyndham fraudulently induces individuals to enter into timeshare purchase and sale Agreements;

c. Whether the Agreement fails to disclose booking fees and other charges;

d. Whether Wyndham has charged excess fees in breach of the Agreement;

e. Whether Wyndham has breached the Agreement by failing to provide adequate services such as cleaning and housekeeping;

f. Whether material misrepresentations and omissions were made to Class Members at sales meetings;

g. Whether Wyndham's actions have damaged Plaintiffs and Class Members;

h. Whether Plaintiffs and Class Members are entitled to rescind their Agreements; and,

I. Whether Plaintiffs and Class Members are entitled to declaratory, injunctive and equitable relief.

75. Plaintiffs' claims are typical of the claims of Class Members.

76. Plaintiffs' interests do not conflict with those of Class Members. They will fairly and adequately protect the interests of Class Members. They are represented by counsel experienced in class action litigation.

77. Common questions of law and fact predominate over questions affecting only individual Class Members, and a class action is superior to other methods for the fair and efficient adjudication of this controversy.

78. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small due to the time and expense necessary to pursue individual litigation. Management of these claims in a class action poses no significant impediments.

79. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class as a whole appropriate.

## COUNT ONE - BREACH OF CONTRACT

80. Plaintiffs repeat and reallege the allegations of paragraphs 1 to 79 above.

81. This count is brought on behalf of the breach of contract class.

82. At all relevant times, an Agreement existed between Plaintiffs and Wyndham.

83. Pursuant to the Agreement, Wyndham agreed to reasonably provide Club Accommodations to Plaintiffs and Class Members.

84. It has failed to do so in breach of the Agreement. Accommodations are not available Advance booking times are excessive.

85. Wyndham agreed to provide certain services to Plaintiffs and Class Members on a reasonable basis, such as housekeeping and cleaning services.

86 It failed to do so in breach of the Agreement.

87. In further breach of the Agreement, Wyndham charged Plaintiffs undisclosed and excessive fees such as maintenance fees and booking fees.

88. The foregoing conduct damaged Plaintiffs.

89. Plaintiffs duly performed their obligations under the Agreement.

## COUNT TWO -
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

90. Plaintiffs repeat and reallege the allegations of paragraphs 1 to 89 above.

91. This count is brought on behalf of the breach of contract class.

92.   The contracts have an implied covenant of good faith and fair dealing.

93.   Wyndham is required to refrain from unreasonable conduct which would prevent Plaintiffs and the other Class Members who signed the agreement from receiving the benefits of their bargain.

94.   By reason of the conduct alleged above, Wyndham has breached this covenant by frustrating the overarching purpose of the Agreement.

95.   Such conduct has damaged Plaintiff and other Class Members.

### COUNT THREE - CLAIM FOR DECLARATORY RELIEF

96 .   Plaintiffs repeat and reallege paragraphs 1 to 79 above

97.   This count is brought on behalf of all Class Members who entered into a "Purchase and Sale Agreement"  in a form substantially the same as the Munoz contract.

98.   The Munoz Plaintiffs bring this claim for declaratory relief and rescission on behalf of themselves and these other Class Members.

99.   The Purchase and Sale Agreement is void *ab initio* for being vague and ambiguous as to the property right being sold and purchased.   A contract for the sale of real property must identify with reasonable certainty the property being sold.   The Purchase and Sale Agreement purports to sell a floating use right without defining that term.

100.  The contract fails to adequately define VOI.

101.  The contract states that the VOI is a fraction where the numerator is the number of points allocated to the Munoz's.  However, the numerator is 84,000 and they are assigned 168,000 points in the contract so the wrong number is used for the numerator.

102.  The contract fails to define the denominator.

103.  The contract should be declared void *ab initio* for its failure to adequately define what property is being bought and sold.

## COUNT FOUR - VIOLATION OF DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

104.  Plaintiffs repeat and reallege paragraphs 1 to 79 above.

105.  This count is brought on behalf of the Subclass who reside in the District of Columbia.

106.  Section 28-3904 of the D.C. Code outlaws unfair or deceptive trade practices, whether or not any consumer is in fact misled, deceived or damaged thereby.  Unfair or deceptive trade practices include misrepresenting a material fact if such failure has a tendency to mislead; and failing to state a material fact if such failure has a tendency to mislead.

107.  The Code applies to real estate finance transactions.  Wyndham finances purchasers who buy timeshare points.

108.  Section 28-3905 (k)(1)(A)  of the D.C. Code entitles a consumer to bring an action seeking relief from the use of an unlawful practice.     Section 28-3905 (k) (2) provides for the recovery of treble damages, reasonable attorney's fees, punitive damages, restitution in representative actions, and injunctive relief.

109.  By reason of the conduct alleged above, Wyndham violated the D.C. Consumer Protection Procedures Act.

110.  Wyndham's acts were wanton, willful and malicious so as to entitle Plaintiffs  and Class Members to an award of punitive damages.

## COUNT FIVE - VIOLATION OF ILLINOIS CONSUMER FRAUD ACT

111.  Plaintiffs repeat and reallege paragraphs 1 to 79 above.

112.    This count is brought on behalf of the Subclass who reside in Illinois.

113.    The Illinois Consumer Fraud and Deceptive Practices Act 815 ILCS 505/1 et seq. prohibits:

> ...unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact... in the conduct of trade or commerce...whether any person has in fact been misled, deceived or damaged thereby.

114.    Section 505/10a of the Act provides for actions for damages:

> Any person who suffers actual damages as a result of a violation of this Act, committed by any other person may bring an action against such person.

115.    By reason of the conduct alleged above, Wyndham violated the Illinois Consumer Fraud Act and these violations caused damage to Plaintiffs.

116.    Wyndham's acts were wanton, willful and malicious so as to entitle Plaintiffs and Class Members to an award of punitive damages.

117.    Trade or commerce has been affected.

## COUNT FIVE  - NEGLIGENT MISREPRESENTATION

118.    Plaintiffs repeat and reallege paragraphs 1 to 79.

119.    This count is brought by on behalf of members of the Subclass.

120.     Numerous negligent misrepresentations and omissions were made at the Wyndham sales presentations including, without limitation, the following false material misrepresentations and omissions:

a.  Stating that points would not expire;

-32-

b. Stating that points could be redeemed for cash;

c. Stating that maintenance fees would not increase;

d. Not disclosing that using Wyndham points was often more expensive than booking properties or travel through non-Wyndham public websites;

e. Not disclosing that Wyndham destinations were often not available;

f. Not adequately disclosing booking fees;

g. Not adequately disclosing the cost and quality of housekeeping and cleaning services; and,

h. Not adequately disclosing other material aspects of the Club Wyndham program.

121. Wyndham was negligent in making these misrepresentations and allowing its sales persons and agents to make such misrepresentations. Wyndham had a duty to supervise the representations made by its sales persons and it breached that duty. Wyndham is also liable for the misrepresentations under the doctrines of *respondeat superior* and agency.

122. Plaintiffs were damaged as the result of the negligent misrepresentations.

123. Wyndham's actions were willful, wanton and malicious so as to entitle Plaintiffs to recover damages.

### COUNT SIX - FRAUD IN THE INDUCEMENT

124. Plaintiffs repeat and reallege paragraphs 1 to 79.

125. This count is brought on behalf of the Subclass.

126. The foregoing omissions and misrepresentations of Wyndham and its agents were materially false.

127. Wyndham and its agents knew of the falsity of the misrepresentations and omissions

when made or made them recklessly.

128.  Wyndham and its agents intended that Plaintiffs be induced to act based on such misrepresentations and omissions.

129.  Plaintiffs actually and justifiably relied on the misrepresentations and omissions, and thereby sustained injury.

130.  Wyndham's actions were willful, wanton and malicious so as to allow the recovery of punitive damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief on behalf of themselves and all others similarly situated:

A.  An order certifying the proposed Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure, and appointing Plaintiffs and their counsel to represent the Class and Subclass;

B.  For an order that Defendant be permanently enjoined from engaging in the unlawful activities and practices complained of;

C.  For a declaration that the Purchase and Sale Agreement of the Munoz Plaintiffs and those similarly situated are void *ab initio*;

D.  For rescission of all Class Member contracts with Wyndham;

E.  For restitution of all monies paid to Wyndham;

F.  For compensatory damages;

G.  For punitive damages;

H.  For treble damages under the D.C. Consumer Protection Procedures Act and the consumer protection statutes of other States with similar acts;

-34-

I.  For attorneys' fees; and,

J.  Such further and other relief as the Court deems appropriate.


## **DEMAND FOR A JURY TRIAL**

Plaintiffs demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: October 9, 2019

                                        Respectfully submitted,

                                        Plaintiffs,


                                        By: *Howard B. Prossnitz/s/*



Howard B. Prossnitz, Esq.
LAW OFFICES OF HOWARD B. PROSSNITZ
1014 Ontario Street
Oak Park, IL 60302
(708) 203-5747
prossnitzlaw@gmail.com

Adam Szulczewksi, Esq.
Suite 1600
225 West Washington Street
Chicago, IL 60606
(312) 201-9300
szulcze@outlook.com